# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.          No. **CR 02-427 MCA**

**ANDRES RODRIGUEZ-IBARRA**,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

**THIS MATTER** came before the Court on Defendant Andres Rodriguez-Ibarra's Motion to Suppress filed on April 11, 2002. On May 1, 2002, the Court held an evidentiary hearing on Defendant's motion in Las Cruces, New Mexico. Having fully considered the pleadings of record, the applicable law, the evidence and the arguments of counsel presented at the hearing, and being fully advised in the premises, the Court **DENIES** Defendant Andres Rodriguez-Ibarra's Motion to Suppress based upon the following findings of fact and conclusions of law.

## I.    FINDINGS OF FACT

    1.     United States Border Patrol Agents Oscar Flores, Gilbert Molina, and John Martinez were on duty in or near Deming, New Mexico, during the time period between

approximately 5 a.m. and 6 a.m. on or about December 20, 2001, when the events described below occurred.

2. Agent Flores was monitoring the Border Patrol's Remote Video Surveillance System (RVSS) at the Deming station. Agents Molina and Martinez were on "line watch" monitoring the border area in roving patrols.

3. The Deming RVSS includes fourteen monitors that allow Border Patrol agents to remotely observe the border between the United States and Mexico from the Deming Border Patrol station. The RVSS has infra-red cameras that allow the agents to see individuals and vehicles traveling at night.

4. Six of the RVSS monitors allow the Deming agents to view a location near Columbus, New Mexico, which the Border Patrol agents call the "west farming area." The west farming area is not a port of entry and was generally uninhabited on or about the early morning hours of December 20, 2001, except for the Border Patrol agents stationed nearby and some farmworkers assembling for work in the fields.

5. Sometime after 5 a.m. on or about December 20, 2001, Agent Flores observed via the RVSS four individuals coming from Mexico to the west farming area on foot carrying distinctly large bundles on their backs.

6. The observations of Agent Flores were consistent with a common method of narcotics smuggling whereby backpackers carrying contraband in large bundles walk across the border from Mexico and load their cargo onto a pick-up vehicle that drives to meet them in the United States.

7. Upon observing the four backpackers walking across the border to the west farming area, Agent Flores notified Agents Martinez and Molina of this activity and advised them to standby in that area.

8. Upon receiving this information from Agent Flores, Agent Molina went to the west farming area, observed lights from a pickup truck, and notified Agent Flores of this fact. Agent Molina observed that the pickup truck was "boxed out" and looked like a Ford, but he did not see the truck's insignia.

9. Upon receiving this information from Agent Molina, Agent Flores panned the RVSS cameras to look for vehicles and subsequently located the pickup truck traveling south toward the four backpackers on a U-shaped road that passes through the west farming area. Agent Flores did not observe any other vehicles on that road, and he could not see the driver of the pickup truck.

10. Via the RVSS, Agent Flores observed that the pickup truck turned off its lights when it approached the four backpackers. He then observed the four backpackers unload their large bundles into the pickup truck and run back toward the border with Mexico.

11. Using night-vision goggles from about 300 yards away, Agent Molina also observed the pickup truck approaching the four backpackers. When the pickup truck came within about 100 yards of the backpackers, Agent Molina observed the pickup truck's lights turn off. Although he could not see what transpired between the pickup truck and the backpackers after the pickup truck's lights were turned off, Agent Molina subsequently observed the pickup truck resume travel on the U-shaped road as it turned north.

12. After being advised by other Border Patrol agents of the above information, Agent Martinez located the pickup truck as it parked beside a field in the west farming area. Agent Martinez described the pickup truck as an older-model Ford with an extended cab that had a space behind the front seat. After observing the pickup truck remain parked at the same location for about twenty minutes, Agent Martinez was instructed to approach the vehicle and investigate.

13. Upon receiving these instructions, Agent Martinez drove past the pickup truck and parked in front of it. With the aid of his flashlight, Agent Martinez observed that the cab of the truck appeared to be empty. He approached the pickup truck on foot.

14. While Agent Martinez was approaching the pickup truck on foot, Defendant suddenly sprang up from the seat of the pickup truck and appeared in the window, startling Agent Martinez.

15. When Defendant sprang up from the seat of the pickup truck, Agent Martinez drew his pistol, identified himself, and ordered Defendant to keep his hands on his head. Defendant complied with this order. These actions by Agent Martinez were reasonable under the circumstances.

16. Agent Martinez next went to the passenger-side door of the pickup truck and tapped on the window. Defendant rolled down the passenger-side window, and Agent Martinez observed burlap sacks in the cab area behind the front seat. At that time, Agent Martinez also observed a blanket covering something on the floor in front of the seat of the

pickup truck. Agent Martinez testified that, in his experience, marijuana is often wrapped in burlap material.

17. Based on a concern that the blanket might be concealing weapons or a person who might pose a threat to his safety, Agent Martinez then went around to the driver-side of the pickup truck and asked Defendant, who was then sitting upright in the driver's seat, what was underneath the blanket.

18. According to Agent Martinez, Defendant responded to this question by stating a Spanish slang term for marijuana.

19. Upon hearing Defendant's response, Agent Martinez ordered Defendant out of the pickup truck. Defendant complied with this order and was subsequently placed under arrest and informed of his rights by another Border Patrol agent in accordance with Miranda v. Arizona, 384 U.S. 436 (1966).

20. After Defendant had exited the pickup truck, Agent Martinez entered the cab of the pickup truck and smelled an odor which he recognized as marijuana. He looked under the blanket and saw more burlap sacks. The burlap sacks in the cab of the truck were subsequently searched, and 236 pounds of marijuana were found therein.

21. Agent Molina subsequently arrived at the site of the arrest and observed that the pickup truck in which Defendant was found was the same pickup truck the agent had seen earlier traveling on the U-shaped road in the vicinity of the four backpackers.

22. Defendant subsequently was transported to the Deming Border Patrol station, where he was again given Miranda warnings and then questioned by Border Patrol Agent Xavier Villava.

## II. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

The central question of constitutional importance in this case is whether Agent Martinez was justified in detaining Defendant at gunpoint and asking him what was underneath the blanket after Defendant sprang up from the front seat of the stationary pickup truck. Based upon the agent's reasonable suspicion that Defendant was involved in the smuggling of narcotics, as well as legitimate, objective concerns about the agent's safety, the Court concludes that the answer to this question is yes.

The Fourth Amendment to the United States Constitution protects Defendant's right to be secure in his person and effects against unreasonable searches and seizures. "[A]utomobiles are 'effects' under the Fourth Amendment, and searches and seizures of automobiles are therefore subject to the constitutional standard of reasonableness." United States v. Chadwick, 433 U.S. 1, 12 (1977), overruled in part on other grounds, California v. Acevedo, 500 U.S. 565 (1991).

Simply approaching a stationary vehicle parked on a public roadway to question its occupant or observe what is in plain view, however, does not constitute a search or a seizure under the Fourth Amendment and need not be supported by a showing of reasonableness. See United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996). Thus, it was lawful for

Agent Martinez to approach and observe the stationary pickup truck in which Defendant suddenly appeared.

After Agent Martinez drew his gun in response to Defendant's sudden appearance, Defendant was seized within the meaning of the Fourth Amendment. See United States v. Perdue, 8 F.3d 1455, 1461-62 (10th Cir. 1993). Defendant has standing to challenge the seizure of his person regardless of his possessory interest or property interest in the pickup truck, see United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996), and it is the Government's burden to show that the seizure was reasonable, see United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993). If the Government cannot meet this burden, then the evidence obtained as a result of the seizure must be suppressed unless it was obtained by "means sufficiently distinguishable to be purged of the primary taint" of the unlawful seizure. Wong Sun v. United States, 371 U.S. 471, 487-88 (1963); see United States v. Erwin, 875 F.2d 268, 269 n.2 (10th Cir. 1989).

In order to be considered "reasonable" under the Fourth Amendment, a Border Patrol agent's investigative detention of an individual found in a stationary vehicle near the border with Mexico must be based upon a reasonable suspicion that the individual may be involved in criminal activity, and the scope of the stop must be limited to a brief investigation of the circumstances that provoked the agent's suspicion. See United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975). The Fourth Amendment permits a Border Patrol agent who has stopped a person in a vehicle based upon such a reasonable suspicion to ask such a person to provide information about his or her identity and citizenship, respond to objectively

reasonable concerns about the agent's safety, and explain suspicious circumstances, "but any further detention or search must be based on consent or probable cause." Id. at 881-82l; see generally United States v. Holt, 264 F.3d 1215, 1220-26, 1228-30 (10th Cir. 2001) (en banc).

Determining the reasonableness of the suspicion that prompted Agent Martinez to detain Defendant does not depend on any one factor or series of factors. See United States v. Lopez-Martinez, 25 F.3d 1481, 1484 (10th Cir. 1994). Rather, the Court must consider the totality of the circumstances. See id. "In examining the totality of the circumstances, '[c]ommon sense and ordinary experience are to be employed and deference is to be accorded to a law enforcement officer's ability to distinguish between innocent and suspicious actions.'" United States v. De La Cruz-Tapia, 162 F.3d 1275, 1277 (10th Cir. 1998) (quoting United States v. Wood, 106 F.3d 942, 946 (10th Cir. 1997)). Reasonable suspicion may be based on "'a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation.'" Lopez-Martinez, 25 F.3d at 1484 (quoting Terry v. Ohio, 392 U.S. 1, 22 (1968)).

An agent cannot, however, predicate an investigative detention solely upon a hunch, see De La Cruz-Tapia, 162 F.3d at 1277, or rely solely upon generic facts that are so innocent or susceptible to varying interpretations as to be innocuous, see Wood, 106 F.3d at 946. Although it is "possible for individually innocuous factors to add up to reasonable suspicion, it is 'impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation.'" Id. at 948 (quoting Karnes v. Skrutski, 62 F.3d 485, 496 (3d Cir. 1995)).

In this case, Agent Martinez was relying in part on several suspicious circumstances that were relayed to him by other Border Patrol agents. In particular, Agent Martinez had been informed that the pickup truck in which Defendant was found recently had been seen traveling south to a remote location near the border, turning off its lights, and receiving large bundles of cargo that were loaded by four backpackers who entered the United States from Mexico on foot and then ran back across the border to Mexico under cover of darkness. These facts are sufficient to establish a reasonable suspicion that the occupant of the pickup truck at the time of the seizure was involved in the smuggling of contraband across the border, see Perdue, 8 F.3d at 1462, and Agent Martinez was entitled to rely on the collective knowledge of all the Border Patrol agents involved in the investigation under these circumstances, see United States v. Wright, 171 F. Supp. 2d 1195, 1202 (D. Kan. 2001).

The next question is whether Agent Martinez's actions remained within the proper scope of an investigative detention. An investigative detention based on reasonable suspicion does not necessarily preclude the use of certain security measures when there are objective, reasonable concerns about officer safety. See, e.g., Holt, 264 F.3d at 1223 (concluding that in light of an officer's "objective, reasonable basis to fear for his or her life every time a motorist is stopped," officers conducting routine traffic stops may order the driver and passengers to get out of the vehicle and to raise their hands during the stop); Perdue, 8 F.3d at 1463 (concluding that it was not unreasonable under the circumstances for officers to execute an investigatory stop by drawing their weapons and ordering the defendant out of his car and onto the ground); Gallegos v. City of Colorado Springs, 114 F.3d 1024, 1030-31

(10th Cir. 1997) (concluding that it was not unreasonable under the circumstances for an officer to execute an investigatory stop by grabbing a suspect by the arm and placing him face down on the pavement).

The legal justification for using such security measures during an investigative detention does not depend on whether a suspect actually intended to threaten an officer's safety or whether the officer actually felt threatened by the suspect's actions because "[t]he subjective intentions or state of mind of either the defendant or police is irrelevant to Fourth Amendment analysis." Sanchez, 89 F.3d at 718. Thus, the Court's analysis does not rely on whether Defendant's sudden appearance in the cab of the pickup truck actually startled Agent Martinez or whether Defendant's intentions were innocent when he sprang up from his seat.

Nevertheless, the facts of this case establish a reasonable, objective basis for concerns about officer safety that made it permissible for Agent Martinez to draw his weapon, order Defendant to keep his hands up, and inquire about what was underneath the blanket in front of the seat without exceeding the scope of the investigative detention. An officer has an "objective, reasonable basis to fear for his or her life every time a motorist is stopped," Holt, 264 F.3d at 1223, and, in this instance, Agent Martinez was approaching the pickup truck under circumstances that are sufficiently similar to a traffic stop to warrant the same concerns about officer safety. While "the naked fact that drugs are suspected will not support a per se justification for use of guns and handcuffs in a Terry stop[,]" United States v. Melendez-Garcia, 28 F.3d 1046, 1053 (10th Cir. 1994), in this case, Agent Martinez's

concerns about safety were justifiably heightened because the truck was in a dark and remote location near the border where the agent needed his flashlight to aid his observation, and Defendant appeared in the truck by means of a sudden movement that created an element of surprise, see Holt, 264 F.3d at 1223; Perdue, 8 F.3d at 1463; Gallegos, 114 F.3d at 1030-31.

    As for the inquiry about what was underneath the blanket, the events leading up to the seizure, including the sudden manner in which Defendant appeared in the pickup truck, provided Agent Martinez with a reasonable, objective concern that the blanket might have been concealing contraband, a weapon, or another person. During an investigative detention involving a motor vehicle, law enforcement officers ordinarily are justified in inquiring about the presence of weapons in the vehicle and asking its occupant to explain the suspicious circumstances that prompted the stop in the first place. See Holt, 264 F.3d at 1221-24. The Court recognizes, however, that an investigative detention which falls short of an arrest nevertheless may prompt the need for Miranda warnings before a suspect is interrogated. See, e.g., Perdue, 8 F.3d at 1463-65 (concluding that a suspect who was forced out of his car and onto the ground at gunpoint should have been given Miranda warnings before he was interrogated).

    In the present case, Agent Martinez was not required to inform Defendant of his rights under Miranda before asking Defendant what was underneath the blanket. Miranda warnings were not required at that time because, unlike the suspects in Perdue, 8 F.3d at 1464-65, Defendant had not been "neutralized" when this question was asked. On the contrary, Defendant remained out of Agent Martinez's reach behind the closed door of the pickup

truck where he had access to whatever was underneath the blanket. In this kind of situation, the Supreme Court has recognized a public-safety exception to the requirements of Miranda. See New York v. Quarles, 467 U.S. 649, 655-56 (1984); Holt, 264 F.3d at 1225. Once Defendant responded to Agent Martinez's question by indicating that marijuana was underneath the blanket, the Border Patrol agents at the scene had probable cause to arrest Defendant and to seize and search the pickup truck and bundles. See New York v. Belton, 453 U.S. 454, 462 (1981); United States v. Treto-Haro, ___ F.3d ___, 2002 WL 699454, at *4 (10th Cir. Apr. 24, 2002).

Even if Defendant's incriminating response was suppressed, Agent Martinez still would have been justified in looking underneath the blanket because the officer-safety concerns identified above warranted a brief protective search of the pickup truck's passenger compartment to ensure that all of its occupants had exited and that no weapons were present. See Holt, 264 F.3d at 1223; Wright, 171 F. Supp. at 1204-05. Upon entering the cab of the truck to look underneath the blanket, Agent Martinez was lawfully in a position to observe the large, burlap bundles in the truck and to smell the odor of marijuana emanating from them. See Sanchez, 89 F.3d at 719. Agent Martinez's perceptions at that point established an alternative basis for concluding that the Border Patrol agents had probable cause to arrest Defendant and to seize and search the truck and bundles. See United States v. Castorena-Jaime, 285 F.3d 916, 924-25 (10th Cir. 2002); United States v. Vasquez-Castillo, 258 F.3d 1207, 1212-13 (10th Cir. 2001).

Defendant was given Miranda warnings before the Border Patrol agents questioned him any further. Thus, Miranda does not provide a basis for suppressing Defendant's subsequent statements. See United States v. Gell-Iren, 146 F.3d 827, 830-31 (10th Cir. 1998). In sum, because the investigative detention, arrest, and search met the applicable requirements of the Fourth Amendment and Miranda, the exclusionary rule provides no basis for suppressing the evidence or statements that were produced as a result of these activities.

### III. CONCLUSION

For the foregoing reasons, the Border Patrol agents had reasonable suspicion to detain Defendant when he suddenly appeared in the cab of the pickup truck that the agents recently had seen receiving cargo from backpackers who had crossed the border from Mexico. The agent who initially detained Defendant did not exceed the permissible scope of that detention by questioning Defendant about what was under the blanket in front of the seat, ordering Defendant out of the pickup truck at gunpoint, and entering the truck's cab for the purpose of seeing who or what was underneath the blanket. Upon hearing Defendant state that marijuana was in the pickup truck and/or smelling the marijuana as he entered the truck's cab, the agent had probable cause to arrest Defendant and conduct a more expansive search of the pickup truck and its cargo. The agents gave Defendant Miranda warnings before questioning him any further.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Suppress be and hereby is **DENIED**.

Dated in Albuquerque this 10th day of May, 2002.

                                                        **M. CHRISTINA ARMIJO**
                                                        United States District Judge

Counsel for the Government:
    **Mark D'Antonio**
    Assistant U.S. Attorney
    Las Cruces, New Mexico

Counsel for Defendant Andres Rodriguez-Ibarra:
    **Rita Nunez Neumann**
    Las Cruces, New Mexico